Case 2:19-cv-00387 Document 17 Filed on 05/21/20 in TXSD Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
May 21, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| SANDRA A. FABELA, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. 2:19-CV-387 |
| § | |
| CORPUS CHRISTI INDEPENDENT § | |
| SCHOOL DISTRICT, *et al*, § | |
| § | |
| Defendants. § | |

**ORDER GRANTING
DEFENDANT'S MOTION TO DISMISS**

Plaintiff Sandra Fabela, pro se, filed this lawsuit against Corpus Christi Independent School District (CCISD) and CCISD Superintendent Dr. Roland Hernandez. D.E. 1. After retaining counsel, she filed an amended complaint, which dropped her claims against Dr. Hernandez but maintained a variety of workplace discrimination, retaliation, and other claims against CCISD. D.E. 5.

The Court now considers CCISD's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) (D.E. 8), as well as Plaintiff's response (D.E. 12) and CCISD's reply (D.E. 14). CCISD's motion to dismiss is GRANTED, as detailed below. D.E. 8. Plaintiff is GRANTED leave to amend her complaint. However, Plaintiff's counsel is cautioned that failure to provide factual pleadings in compliance with the federal pleading standards will result in the claims being dismissed.

## BACKGROUND

The Court recounts the allegations of the amended complaint and those contained in two discrimination charges that Plaintiff filed with the Equal Employment Opportunity Commission (EEOC). D.E. 8-1, 8-2. Because the EEOC charges were referenced in the amended complaint, the Court may consider them in evaluating the sufficiency of the pleadings in stating a claim upon which relief may be granted. *Collins v. Morgan Stanley DeanWitter*, 224 F.3d 496, 498–99 (5th Cir. 2000).

### I.    Allegations of the First Amended Complaint

Plaintiff is a Hispanic woman over forty years of age, with an unspecified disability. She began teaching for CCISD at an unspecified school in 2010. In August of 2015, teachers were asked to provide their supervisors with a list of items they needed for their classrooms. Plaintiff submitted a written request for a "teacher chair for her disability," but never received it. D.E. 5, p. 2.

At some unspecified time, other teachers were provided easels for their classrooms, but Plaintiff did not receive one. D.E. 5, p. 2. Principal Segovia told Plaintiff that an easel had been ordered but Plaintiff never received it. At another unspecified time, Plaintiff's school received donations to purchase Smart Boards for first- and second-grade teachers. Plaintiff taught kindergarten through second grade at the time, but did not receive a Smart Board. Three years later, she received a "hand-me-down" Smart Board with broken speakers, while other classrooms received Smart TV's. D.E. 5, p. 3.

At yet another unspecified time, CCISD promoted Alesia Astorage, who was younger than forty and not disabled, to lead teacher. Plaintiff, who had more experience and education, was not offered this position. D.E. 5, p. 3.

On or about November 2017, Plaintiff was overseeing students when one student scratched another. D.E. 5, p. 3. Plaintiff was suspended pending an investigation for child abuse and neglect. Without further elaboration, Plaintiff states she was treated as if she scratched the student herself. D.E. 5, p. 3.

Plaintiff later returned to CCISD. When she returned, Principal Segovia directed Plaintiff to physically deliver her lesson plans to an administrator named Mr. Gonzales on a weekly basis, though he had access to the plans online. Plaintiff's classroom was located across campus so she found this to be an inconvenience. D.E. 5, p. 3. Principal Segovia did not require other teachers to do this.

On March 5, 2019, Principal Segovia and Human Resources Director Donna Adams issued Plaintiff a "job-in-jeopardy" letter. D.E. 5, p. 4. Plaintiff claims there was no basis for the letter because these letters are only given to employees who commit serious infractions. D.E. 5, p. 4. But Adams told Plaintiff that she received the letter because they were not able to terminate her. D.E. 5, p. 4. Segovia and Adams failed to deliver the letter by certified mail, as required by CCISD Board Policy. Plaintiff says the letter damaged her reputation and contained a false statement that she had been investigated three years earlier for drugging a student. D.E. 5, p. 4.

The same student who committed the scratching while under Plaintiff's supervision also scratched another student while under the supervision of a male CCISD employee,

Coach Aceves. But Coach Aceves was not investigated, suspended, or given a "job-in-jeopardy" letter. D.E. 5, p. 3.

While this letter ostensibly arises from the scratching incident, Plaintiff also claims CCISD used it to retaliate against her for reporting CCISD to "AFT Union officials." D.E. 5, p. 4. Plaintiff does not specify what she reported, when she made the report, what person at CCISD was aware of the report, or when that person gained that knowledge.

Finally, Plaintiff says unspecified persons retaliated against her for seeking medical attention for her disabilities by writing her up and ultimately terminating her. D.E. 5, p. 6. She does not specify when this occurred, what medical attention she sought, or what disabilities she had.

## II.  Plaintiff's EEOC Discrimination Charges

Plaintiff filed a discrimination charge on September 4, 2018. D.E. 8-1. The charge contains several boxes that claimants can mark to indicate the type of discrimination they experienced. Plaintiff marked the boxes for sex, national origin, age, and disability discrimination. She also marked the box for retaliation and the box indicating CCISD was engaged in a continuing action. She then wrote a narrative that largely recounts the allegations of the amended complaint, though in varying detail. The earliest instance of discrimination reported in the charge occurred on November 17, 2017, and the most recent occurred on September 4, 2018—the same date Plaintiff filed the charge. The charge clarifies that Plaintiff works at Gibson Elementary School.

Plaintiff filed a second discrimination charge on January 2, 2019. D.E. 8-2. In this charge, Plaintiff only marked the boxes for retaliation and continuing action. Plaintiff's

narrative alleges that CCISD retaliated against her because she filed the first charge. These allegations are mostly conclusory, but the most specific claims are that CCISD "inappropriately disclosed [Plaintiff's] EEOC complaint to employees who had no knowledge of [her] job performance" and that "[t]he demeanor of employees who were once friendly towards [her] has changed." D.E. 8-2.

## DISCUSSION

### I. Plaintiff's Procedural Requests

The Court addresses two procedural issues raised in Plaintiff's response before turning to the substance of Defendant's motion.  First, Plaintiff asks the Court to continue its ruling on the instant motion and permit discovery because "this case is early in its development" and "there is some question about the complexities, scope and nature of the Defendant's violations." D.E. 12, p. 3.

The Court finds that this is not an adequate basis to postpone its ruling on the instant motion.  Plaintiff has not demonstrated that she cannot provide the factual underpinnings of her allegations without discovery of specific information held only by CCISD.  One of the purposes of Rule 12(b)(6) and the pleading standards is to spare defendants of fishing expeditions in the name of discovery before demonstrating that the claims are plausible. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The request is DENIED.

Second, beyond the two EEOC discrimination charges discussed above, Plaintiff asks the Court to consider five other exhibits that she filed with her response to the instant motion: her original complaint, a right to sue letter from the EEOC, "Intake

Notes," "Incidents of Continued Acts of Discrimination," and a "Recap of Events." D.E. 12-1, 4-7.[1] The Court will not consider the original complaint because the amended complaint does not incorporate it by reference. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). And the Court will not consider the remaining documents because the amended complaint does not reference them. *See Collins v. Morgan Stanley Dean*, 224 F.3d 496, 498-99 (5th Cir. 2000).

## II.  Defendant's Motion to Dismiss

At first glance, the amended complaint appears to contain ten separately labeled claims. D.E. 5, p. 5–9. Many of these claims, however, conflate several different causes of action. *Id*. The Court interprets the claims as follows:

(1)  Disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. (ADA), and the Texas Commission on Human Rights Act, Texas Labor Code § 21.001 *et seq*. (TCHRA);

(2)  Denial of reasonable accommodation under the ADA and TCHRA;

(3)  Gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Title VII), and the TCHRA;

(4)  National origin discrimination under Title VII and the TCHRA;[2]

(5)  Age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq*. (ADEA), and TCHRA;

(6)  Retaliation under the ADA and TCHRA for requesting a "chair for her disability";

---

[1] Plaintiff also submitted the amended complaint as an exhibit to her response (D.E. 12-2), which the Court will of course consider.

[2] The amended complaint occasionally uses the term "race," instead of "national origin." These are distinct concepts under both Title VII and the TCHRA. 42 U.S.C. § 2000e-2; Tex. Labor Code § 21.051. Looking at the amended complaint, however, it appears Plaintiff is using both terms to refer to her Hispanic identity. The Court exclusively uses the term "national origin," because that is how Plaintiff framed the issue in her first EEOC discrimination charge and because Plaintiff's "race" and "national origin" claims would otherwise be duplicative.

(7)      Retaliation under Title VII for reporting discrimination to the EEOC;

(8)      Retaliation under an unspecified law for reporting unspecified acts to the AFT Union;

(9)      Retaliation under the TCHRA by "writing Plaintiff up" because she sought medical attention for her disabilities and terminating her;

(10)      Hostile work environment under Title VII, the ADA, and TCHRA;

(11)      Official oppression under 42 U.S.C. § 1983;

(12)      Conspiracy against rights under 42 U.S.C. § 1983; and

(13)      Retaliation under the Whistleblower Protection Act of 1989, 5 U.S.C. § 2302(b)(8).

D.E. 5, p. 5–9.

### A.     Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must make "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim must be "plausible on its face," which means that its "factual content" permits the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citations and quotations omitted). The court must accept all factual allegations as true, but it need not accept legal conclusions. *Id*.

### B.     Title VII Claims for Gender and National Origin Discrimination

Regarding her gender discrimination claims, Plaintiff alleges she was investigated, temporarily suspended, and given a "job-in-jeopardy letter" after one student scratched another student while under her supervision, while a male coach did not face those consequences after a similar incident occurred on his watch. And she asserts in a conclusory manner that she was "subject to unlawful discrimination based on her national

origin." D.E. 5, p. 6. Defendant asks the Court to dismiss the Title VII discrimination claims because, *inter alia*, Plaintiff fails to allege she suffered an adverse employment action. D.E. 8, p. 22-25.

To state a discrimination claim under Title VII, Plaintiff must allege she (1) is a member of a protected group; (2) suffered some adverse employment action; and (3) was treated less favorably than other similarly situated employees outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "'[A]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating.'" *Id.* at 559–60 (citing *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)), *overruled on other grounds*.

Plaintiff's allegations are insufficient to state a claim under *McCoy*, which held that "administrative leave" with pay does not constitute an adverse employment action for the purpose of Title VII discrimination claims. 492 F.3d at 559. Plaintiff provides no basis for the Court to distinguish her suspension from the administrative leave found inadequate in *McCoy*. She alleges that she returned to her position after her suspension. She does not specifically argue that the "job-in jeopardy" letter constituted an adverse action. She does not indicate whether her suspension affected her pay[3] and she makes no attempt to identify any other adverse action resulting from gender or national origin discrimination. Thus, her discrimination claims under Title VII are DISMISSED.

---

[3] Defendant claims without citation that Plaintiff was placed on "paid leave." D.E. 14, p. 7. The Court finds no basis to infer that from the operative complaint or the discrimination charges.

### C.    ADEA Claim for Age Discrimination

Plaintiff alleges that CCISD promoted Alesia Astorage, who is younger than forty and non-disabled, to lead teacher, even though Astorage had less experience and training than Plaintiff.  To succeed on this ADEA discrimination claim, Plaintiff must show: "1) [s]he belongs to the protected class, 2) [s]he applied to and was qualified for a position for which applicants were being sought, 3) [s]he was rejected, and 4) another applicant not belonging to the protected class was hired."  *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 680–81 (5th Cir. 2001).

Defendant argues that Plaintiff failed to allege that she applied to the lead teacher position.  Plaintiff simply responds that she adequately asserted her claim.  The Court agrees with Defendant because Plaintiff only alleges that she was "not offered this position." D.E. 5, p. 3.  The claim is DISMISSED.

### D.    TCHRA Claims for Age, Gender, and National Origin Discrimination

Plaintiff also brought claims for gender, national origin, and age discrimination under the TCHRA.  Because the TCHRA "correlates state law with federal law in the area of employment discrimination," these TCHRA claims are DISMISSED for the same reasons as the corresponding federal claims discussed above.  *Colbert v. Georgia-Pac. Corp.*, 995 F. Supp. 697, 701 (N.D. Tex. 1998).[4]

---

[4] *See also Medina*, 238 F.3d at 680 n.1 (noting the ADEA and TCHRA apply the same standard in age discrimination cases); *Ruiz v. Edcouch-Elsa Indep. Sch. Dist.*, No. 7:13-CV-443, 2014 WL 1385877, at *4 (S.D. Tex. Apr. 9, 2014) (holding Title VII and the TCHRA require an "adverse employment action" to support a gender discrimination claim); *Shiyan Jiang v. Texas Comm'n on Envtl. Quality*, 321 F. Supp. 3d 738, 745 (W.D. Tex. 2018) (applying the same standard to TCHRA and Title VII national origin discrimination claims).

### E. ADA and TCHRA Claims for Disability Discrimination

Plaintiff brings claims for disability discrimination under the ADA and TCHRA. Defendant argues they should be dismissed because Plaintiff has not alleged a "disability" that is covered by either law. The Court agrees. "To state a claim under the ADA, the Complaint must adequately allege that [Plaintiff] suffered from a 'disability' as defined under the ADA." *Brown v. Bd. of Trustees Sealy Indep. Sch. Dist.*, 871 F. Supp. 2d 581, 605 (S.D. Tex. 2012). The same rule applies to the TCHRA. *Cruz v. R2Sonic, LLC*, 405 F. Supp. 3d 676, 686 n.2 (W.D. Tex. 2019). Plaintiff argues she has a disability because she is "morbidly obese," but neither her amended complaint nor her discrimination charges make this allegation. D.E. 12, p. 4. Moreover, even the briefing is silent as to certain factual requirements that must be met before obesity qualifies as a disability.[5] For this reason, Plaintiff's ADA and TCHRA claims for disability discrimination, hostile work environment, and denial of reasonable accommodation are DISMISSED.[6]

### F. Title VII, ADA, and TCHRA Claims for Retaliation

Plaintiff brings retaliation claims under Title VII, the ADA, and the TCHRA. These statutes have identical rules for retaliation claims. *See Munoz v. Seton Healthcare, Inc.*, 557 F. App'x 314, 321 (5th Cir. 2014). Plaintiff must show: "(1) [she] engaged in a protected activity pursuant to one of the statutes, (2) an adverse employment action

---

[5] While the parties do not brief this point, obesity can constitute a disability under the ADA. *See Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1112 (8th Cir. 2016). Under the ADA, disabilities include: "(1) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (2) a record of such impairment; or (3) being regarded as having such an impairment." *Brown*, 871 F. Supp. 2d at 605 (citations omitted).

[6] These are all separate claims. *See Dortch v. Mem'l Herman Healthcare Sys.-Sw.*, 525 F. Supp. 2d 849, 869–74 (S.D. Tex. 2007). Plaintiff also brings disability-based retaliation claims, but they do not require a disability. *Miles-Hickman v. David Powers Homes, Inc.*, 589 F. Supp. 2d 849, 868 (S.D. Tex. 2008).

occurred[7], and (3) there exists a causal link connecting the protected activity to the adverse employment action." *Id*. (citations omitted). For the following reasons, Plaintiff has failed to state any retaliation claim.

### 1. Retaliation for seeking medical attention for disability

Plaintiff brings a retaliation claim under the TCHRA, alleging in full that:

> Defendants retaliated against Plaintiff in direct violation of Chapter 21 of the Texas Labor Code by writing Plaintiff up on multiple occasions for seeking medical attention for her disabilities and ultimately terminating her, and other instances described above.

D.E. 5, p. 6.

Defendant asks the Court to dismiss this claim, arguing in part that Plaintiff makes no specific factual allegations supporting her claim that she sought medical attention for a disability. Plaintiff responds with conclusory assertions that her retaliation claims are "supported by the pleadings and supporting exhibits." D.E. 12, p. 6-7. The Court agrees with Defendant, and finds that this allegation amounts to a conclusory claim of illegal harm.[8] This claim is DISMISSED.

### 2. Retaliation for reporting discrimination to the EEOC

Plaintiff brings retaliation claims under Title VII and the ADA, based on Defendant's alleged retaliation against Plaintiff after she filed her two EEOC discrimination charges. The Court finds Plaintiff has not made sufficient factual

---

[7] An adverse employment action in a retaliation claim is an action that "might well have dissuaded a reasonable worker" from engaging in a protected activity. *Mitchell v. Snow*, 326 F. App'x 852, 855 (5th Cir. 2009) (quotations and citations omitted).

[8] The Court need not reach Defendant's additional arguments that: (1) this claim appears to be a remnant from the original complaint erroneously included in the amended complaint; (2) the amended complaint contains conflicting allegations about whether Plaintiff was terminated; and (3) Plaintiff fails to specify her disability.

allegations to suggest Defendant retaliated against her. It need not address Defendant's other arguments on these claims.

The amended complaint does not identify any acts, retaliatory or otherwise, occurring after Plaintiff filed her first EEOC charge on September 4, 2018. While the second EEOC charge alleges some events occurring after the first charge, the allegations are conclusory. D.E. 8-2. The most specific claims are that: (1) Defendant "inappropriately disclosed [Plaintiff's] EEOC complaint to employees who had no knowledge of [her] job performance" and (2) that "[t]he demeanor of employees who were once friendly towards [Plaintiff] has changed." These sparse factual allegations do not permit the Court to infer that Plaintiff is entitled to relief. This claim is DISMISSED.

In a similar vein, Plaintiff has not alleged any acts occurring after she filed her second EEOC charge on January 2, 2019. The claim for retaliation based on that charge is DISMISSED.

### 3. Retaliation for reporting to AFT Union officials

Plaintiff brings a retaliation claim under an unspecified law, alleging in total that:

> The ["job-in-jeopardy"] letter [from human resources and Principal Segovia] has damaged Ms. Fabela's reputation and work history and is a result of Discrimination based on Gender, Disability and Retalition [sic] for having reported CCISD to AFT Union officials.

D.E. 5, p. 4.

The Court agrees with Defendant that this is a conclusory allegation that Defendant illegally caused Plaintiff injury. The claim is DISMISSED.

### 4. Retaliation for requesting a "chair for her disability"

In her last retaliation claim, Plaintiff alleges Defendant violated the ADA and TCHRA by retaliating against her for requesting a "chair for her disability" in August of 2015. D.E. 5, p. 2. Defendant argues (1) this claim is time barred, (2) the alleged retaliation is too trivial to create liability, and (3) Plaintiff fails to allege a causal link between her request and the alleged retaliation. Plaintiff does not offer any specific counter arguments.

The Court agrees in part with Defendant's first and third arguments. Plaintiffs must exhaust their administrative remedies before filing suit under the ADA. *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 390 (5th Cir. 2005). To do so, they must "fil[e] a charge of discrimination with the EEOC within 300 days after the alleged violations occurred." *Id*. It is undisputed here that Plaintiff filed a charge on September 4, 2018, that alleges retaliation. D.E. 8-1. Therefore, any ADA violations occurring before November 8, 2017—300 days before she filed her charge—are time barred.[9]

Based on these rules, Defendant claims that Plaintiff's retaliation claim is barred because she requested her chair in August of 2015. However, Plaintiff was only required to file her charge "within 300 days after the alleged ***violations*** occurred." *Henson*, 128 F. App'x at 390 (emphasis added). In a retaliation claim, the relevant violation is the defendant's retaliation—not the event that prompted it. *See DeBlanc v. St. Tammany Par. Sch. Bd.*, 640 F. App'x 308, 310 n.2 (5th Cir. 2016).

---

[9] Defendant contends that the cut-off day is November 8, 2017, and Plaintiff does not contest the point. The Court accepts it for purposes of this order.

Theoretically, Plaintiff could argue that Defendant retaliated against her on or after November 8, 2017, for the request she made in August of 2015.[10] But this large time gap—roughly two years and two months—would make it unreasonable for the Court to infer any causal connection between the alleged request and the alleged retaliation, especially since it is unclear that the perpetrators of the retaliation were aware of the request. *See Ramirez v. Gonzales*, 225 F. App'x 203, 210 (5th Cir. 2007) ("Fifth Circuit precedent requires evidence of knowledge of the protected activity on the part of the decision maker and temporal proximity between the protected activity and the adverse employment action.").[11]  The Court need not reach Defendant's other arguments. The claim is DISMISSED.

### G. Time Bar on Certain Title VII and ADEA Discrimination & Retaliation Claims

The Court has already found that Plaintiff has failed to state a claim for gender and national origin discrimination under Title VII, age discrimination under the ADEA, and retaliation under any of her cited statutes. Because the Court is granting Plaintiff leave to amend her complaint, the Court addresses Defendant's argument that certain Title VII and ADEA claims are time barred.

As discussed above, the ADA requires plaintiffs to file EEOC discrimination charges within 300 days after the alleged discrimination occurred. Title VII and the

---

[10] Plaintiff does not make this argument. Even if she did, the amended complaint does not specify when the retaliatory acts—the denial of the classroom easel and Smart Board—occurred, so the Court can only guess whether they are time barred. D.E. 5, p. 2–3. Plaintiff alleges other retaliatory acts occurred on or about November 2017, but she specifically alleges they relate to the scratching incident. D.E. 5, p. 2–4.

[11] Plaintiffs are not required to provide evidence in response to a motion to dismiss. The Court only finds that Plaintiff has not alleged facts sufficient to infer temporal proximity or a decision maker's knowledge.

ADEA have the same requirement.[12] Defendant argues that Plaintiff cannot bring claims for discrimination or retaliation under Title VII or the ADEA for acts occurring before November 8, 2017. Plaintiff does not challenge the accuracy of this argument, but responds that her hostile work environment claim is based on a "continuing act" and is not time barred. This is irrelevant.

Discrimination and retaliation claims are distinct from hostile work environment claims. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002). And the continuing violation doctrine only applies to the latter. *Id*. For this reason, Plaintiff cannot bring claims for discrimination or retaliation under Title VII or the ADEA for acts occurring before November 8, 2017. Any such claims are DISMISSED.

### H. Hostile Work Environment

Plaintiff brings hostile work environment claims under Title VII, the ADA, and the TCHRA. The Court has dismissed Plaintiff's disability claims for failure to allege a qualified disability. And the Court stated that the national origin-based claim was conclusory. Thus the Court only addresses Plaintiff's gender-based harassment claim under Title VII and the TCHRA.

#### 1. Exhaustion of Administrative Remedies

Defendant first argues the Court should dismiss Plaintiff's Title VII hostile work environment claim for failure to exhaust administrative remedies. In particular, Plaintiff's EEOC discrimination charge failed to notify Defendant of such a claim. *See Brooks v.*

---

[12] *Stith v. Perot Sys. Corp.*, 122 F. App'x 115, 117 (5th Cir. 2005).

*Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 841 (E.D. Tex. 2014). This is unpersuasive.

Plaintiff marked the "continuing action" box on both of her charges, which indicates an intent to bring hostile work environment claims. *See Walton-Lentz v. Innophos, Inc.*, No. CIV.A. 08-601, 2011 WL 721491, at *4 (M.D. La. Feb. 22, 2011), *aff'd*, 476 F. App'x 566 (5th Cir. 2012). While Plaintiff did not use the phrase "hostile work environment," Defendant cites no authority requiring plaintiffs to use that phrase.

### 2. Sufficiency of Pleadings

Defendant argues that Plaintiff failed to state a gender-based hostile work environment claim because (1) the alleged harassment is not severe or pervasive enough to support a claim and (2) even if it were, the factual allegations do not permit the Court to infer Plaintiff was harassed because of her gender.[13]

The Court agrees. Plaintiff alleges several acts that could be harassing in nature. For example, she claims she was denied classroom supplies—an easel and a Smart Board—that other teachers were provided. But she does not allege those teachers were men, so the Court cannot infer gender-based harassment. The Court only finds one possibly gender-based difference in treatment: CCISD's different treatment of Plaintiff and Coach Aceves after they both had scratching incidents involving the same child. But

---

[13] Title VII and the TCHRA provide the same standard for determining hostile work environments. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012). To state a claim, Plaintiff must allege she: "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [her belonging to the protected group]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Id.* at 651 (citation omitted).

this single allegation cannot support a hostile work environment claim because such claims must involve "repeated conduct." *Morgan*, 536 U.S. at 115. The gender-based hostile work environment claims under Title VII and the TCHRA are DISMISSED.

## I. Claims under Section 1983

Plaintiff brings two claims under 42 U.S.C. § 1983. She first alleges that "[t]he conduct of Defendant constitutes a violation of 42 USC 1983 and the Texas Penal Code 39.03 Official Oppression (chapter 39 Abuse of Office)[.]" D.E. 5, p. 7. Based on this language, it appears Plaintiff is attempting to bring a claim under Section 1983 for a violation of the state penal code. But, as Defendant argues, Section 1983 only permits claims for the violation of federal rights. *James v. Texas Collin Cty.*, 535 F.3d 365, 373 (5th Cir. 2008). And the Texas Penal Code does not provide a civil cause of action. *Arredondo v. Gulf Bend Ctr.*, No. CIV.A. H-06-1580, 2006 WL 3761787, at *2 (S.D. Tex. Dec. 20, 2006). The claim for official oppression is DISMISSED WITH PREJUDICE.

Plaintiff brings a second claim under Section 1983, alleging that Defendant violated 18 U.S.C. § 241, which criminalizes certain conspiracies. But conspiracy claims are "not actionable without an actual violation of section 1983." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990) (citations omitted).[14] They also require the identification of two or more persons who agree to participate in the wrongful act. *See* 18 U.S.C. § 241 ("If two or more persons conspire . . . ."). Plaintiff does not identify any

---

[14] Section 1983 does not create any substantive rights, but only permits suits for violations of substantive rights provided in the Constitution or other federal law. The quoted language only means that Section 1983 requires the actual violation of such a right; agreements to violate rights do not suffice.

17 / 19

federal right[15] that has been violated or the participants in any conspiracy. And Section 241 does not create a civil cause of action. *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 760 (5th Cir. 1987). Plaintiff's conspiracy claim is therefore DISMISSED. Given these findings, the Court need not reach Defendant's other arguments regarding these claims.

### J. The Whistleblower Claim

Plaintiff asserts a retaliation claim under the Whistleblower Protection Act of 1989, which only protects federal employees. D.E. 5, p.8; *Thomas v. Odis C. Norris*, No. 1:07-CV-573, 2009 WL 3856920, at *7 (E.D. Tex. Nov. 16, 2009). Defendant points out that Plaintiff is not a federal employee. D.E. 8, p. 32. Plaintiff does not dispute this point, but instead argues that the Texas Whistleblower Act gives her a cause of action—a claim not made in the amended complaint. D.E. 12, p. 7. Because the parties do not dispute that Plaintiff has no claim under the Whistleblower Protection Act of 1989, the claim under that act is DISMISSED WITH PREJUDICE. Defendant additionally disputes whether Plaintiff stated a claim under the state whistleblower law. Because the amended complaint does not bring a claim under that law, the Court need not reach this argument.

### K. Punitive Damages

In its final argument, Defendant asks the Court to dismiss Plaintiff's request for punitive damages because Section 1983, the ADEA, the ADA, and Title VII do not permit

---

[15] Plaintiff cannot assert Section 1983 claims merely by pointing to violations of Title VII, the ADA, or the ADEA; she must identify federal rights that are independent of these Acts. *See Nowroozi v. City of Houston*, 46 F. 3d 66 (5th Cir. 1995) (Title VII); *Holbrook v. City of Alpharetta, Ga.*, 112 F. 3d 1522, 1531 (11th Cir. 1997) (the ADA); *Lafleur v. Texas Dep't of Health*, 126 F. 3d 758, 760 (5th Cir. 1997) (the ADEA).

such damages. Plaintiff did not respond to this argument. Because Plaintiff has stated no opposition, the Court dismisses the claim for punitive damages.

### III. Leave to Amend Complaint

Plaintiff requests leave to amend if the amended complaint is found insufficient under Rule 12(b)(6). Plaintiff's request is GRANTED. If there are any future motions to dismiss, the Court will only consider the allegations of the operative complaint and information or allegations contained in documents properly incorporated into the operative complaint. *See Collins*, 224 F.3d at 498–99; *King*, 31 F.3d at 346.

### CONCLUSION

Defendant's motion to dismiss is GRANTED. D.E. 8. Plaintiff's claim under the Whistleblower Protection Act of 1989 and her claim for official oppression under Section 1983 are DISMISSED WITH PREJUDICE. All other claims are DISMISSED without prejudice. Plaintiff is GRANTED leave to amend her complaint. Such amendment shall be filed by **June 4, 2020**. Again, Plaintiff's counsel is cautioned that the Court will dismiss any pleading that fails to comply with the federal fact-based pleading standards.

ORDERED this 21st day of May, 2020.

_____
NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE