United States District Court
Southern District of Texas
**ENTERED**
September 08, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SANDRA A. FABELA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-387 |
| | § | |
| CORPUS CHRISTI INDEPENDENT | § | |
| SCHOOL DISTRICT, *et al*, | § | |
| | § | |
| Defendants. | § | |

## ORDER GRANTING IN PART
## DEFENDANT'S MOTION TO DISMISS

Before the Court is Corpus Christi Independent School District's (CCISD) motion to dismiss the corrected second amended complaint (SAC) (D.E. 21), Plaintiff's response (D.E. 25), and CCISD's reply (D.E. 26). As detailed below, CCISD's motion is GRANTED IN PART. D.E. 21. Plaintiff is DENIED leave to amend.

## BACKGROUND

In the SAC, Plaintiff Sandra Fabela asserts twelve causes of action related to workplace discrimination that she allegedly experienced as a teacher at Gibson Elementary School:

1.  Disability discrimination under the Americans with Disabilities Act, 42 U.S.C. § 1202 *et seq*. (ADA), and the Texas Commission on Human Rights Act, Texas Labor Code § 21.001 *et seq*. (TCHRA);

2.  Denial of reasonable accommodations under the ADA and TCHRA;

3.  Gender discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*. (Title VII), and the TCHRA;

4.  National origin discrimination under Title VII and the TCHRA;

5.      Race discrimination under Title VII and the TCHRA;

6.      Age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA), and TCHRA;

7.      Retaliation under the ADA, TCHRA, and Title VII;

8.      Hostile work environment under Title VII, the ADA and TCHRA;

9.      Official oppression under 42 U.S.C. § 1983;

10.     Conspiracy against rights under 42 U.S.C. § 1983;

11.     Conspiracy and violation of 42 U.S.C. § 1983; and

12.     Retaliation under the Whistleblower Protection Act of 1989, 5 U.S.C. § 2302(b)(8) and the  Texas Whistleblower Act, Tex. Gov't Code. §§ 554.001–554.010.

D.E. 24, p. 27–36.

These claims largely mirror the claims that Plaintiff asserted in her first amended complaint (FAC).  D.E. 5.  The Court previously reviewed the FAC and, on Defendant's motion, dismissed all claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  D.E. 17.  The Court hereby incorporates the legal standards provided in its previous order dismissing those claims.  *See id*.  The Court expounds on any newly asserted factual allegations or legal rules as necessary below.

## DISCUSSION

### I.      Procedural Requests

Before addressing the merits of CCISD's motion, the Court must address three procedural issues.   First, Plaintiff requests a continuance so the parties can conduct discovery.  D.E. 25, p. 2.  She made a similar request in response to CCISD's first motion to dismiss, but the Court denied it.  D.E. 17, p. 5.  Plaintiff does not identify any error in

the prior ruling or provide any new grounds for her request.  The Court therefore denies the instant request for a continuance for the same reasons it denied the prior request.  *See* D.E. 17, p. 5.

Second, Plaintiff attached twenty-nine exhibits to the SAC and now asks that the Court take judicial notice of them.[1]  The Court interprets this as a request to consider the exhibits as part of the SAC.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000).[2]  CCISD does not object.  It instead relies on the exhibits in

---

[1] *See* D.E. 24-1 (undated letter from Plaintiff to unspecified person titled "Report of Discrimination and Retaliation and Request for Protection from Retaliation"); 24-2 (timeline of events apparently written by Plaintiff); 24-3 (undated letter to EEOC by Plaintiff requesting that EEOC take certain actions while investigating CCISD's alleged discrimination); 24-4 (undated intake notes seemingly related to one of Plaintiff's EEOC discrimination charges); 24-5 (letter from Plaintiff's doctor concerning her obesity, dated March 29, 2019); 24-6 (undated letter from Principal Julissa Segovia to the CCISD superintendent, recommending that Plaintiff be suspended with pay due to "allegations of student neglect and abuse"); 24-7 (email dated October 10, 2017 from Principal Segovia to Plaintiff, telling Plaintiff to "[k]eep setting those high expectations for your students"); 24-8 (letter dated November 17, 2017 from the CCISD superintendent to Plaintiff informing her that she has been placed on temporary administrative leave with pay pending the outcome of an investigation into allegations of "student abuse and neglect") 24-9 (letter dated November 30, 2017, along with several attachments, from Sgt. David Ramos to Plaintiff notifying her that he will be investigating allegations of student neglect and abuse); 24-10 (memorandum dated December 5, 2017 from Sgt. David Ramos to the CCISD superintendent, detailing interviews conducted as part of his investigation); 24-11 (statement by Plaintiff to unspecified persons dated December 14, 2017, rebutting allegations of student abuse and neglect); 24-12 (letter dated February 6, 2018 from CCISD's Assistant General Counsel to personnel from the Corpus Christi American Federation of Teachers in response to public information request); 24-13 (email chain from June 2018 in which Plaintiff and Donna Adams discuss Plaintiff's job-in-jeopardy letter and Plaintiff's potential transfer); 24-14 (Plaintiff's initial EEOC discrimination charge, dated September 4, 2018); 24-15 (letter from CCISD's General Counsel to Plaintiff dated September 4, 2018, confirming receipt of Plaintiff's request for whistleblower protection); 24-16 (Plaintiff's "employee grievance informal conference request" dated October 2, 2018, seeking unspecified accommodations); 24-17 (Plaintiff's "employee grievance report" dated December 9, 2018, seeking "expungement" of report written by CCISD's executive director of school leadership about Plaintiff's allegations of discrimination); 24-18 (Plaintiff's second EEOC discrimination charge, dated January 2, 2019); 24-19 (letter dated February 28, 2019 from Plaintiff to a variety of individuals and entities, rebutting report by CCISD's executive director for school leadership concerning Plaintiff's allegations of discrimination); 24-20 (civil cover sheet for this action); 24-21 (Plaintiff's response to Defendant's first set of interrogatories); 24-22 (letter dated March 30, 2018 from Plaintiff to Principal Segovia regarding Plaintiff's job-in-jeopardy letter); 24-23 (job description for position of Elementary Special Education Section Leader); 24-24 (email chain between Plaintiff and EEOC personnel, regarding Plaintiff's job performance in 2017); 24-25 (handwritten letter dated July 18, 2019, from Esther Nuhu to unspecified person, regarding November 2017 incident where a student left Plaintiff's classroom); 24-26 (copy of D.E. 24-3); 24-27 (undated handwritten note from Virginia Mathes commending Plaintiff's classroom work); 24-28 (image of the email provided at D.E. 24-7); 24-29 (letter dated April 2, 2019 from Justin Guajardo to unspecified persons, questioning the accuracy of the report written by Sgt. David Ramos, see D.E. 24-10).

[2] Because the Court is only entertaining a motion to dismiss, there is no need to establish any facts by taking judicial notice of facts alleged in the pleadings.  *See* Fed. R. Evid. 201.  The Court applies the federal pleading standard as explained in its order on the first motion to dismiss.  *See* D.E. 17, p. 7.

arguing for dismissal. The Court will consider the exhibits to the SAC because Plaintiff expressly incorporated them into the pleadings. *See Collins*, 224 F.3d at 498–99.

Third, Plaintiff attached twenty-five exhibits to her response to CCISD's motion. But she only asks the Court to consider these exhibits if the instant motion to dismiss is converted into a motion for summary judgment. D.E. 25, p. 2. For its part, CCISD asks the Court to disregard these exhibits. D.E. 26, p. 1 n.1. The Court sees no reason to convert CCISD's motion into a motion for summary judgment. Nor does it see any request that it do so. For these reasons, the Court will not consider the exhibits to Plaintiff's response.

The Court now turns to the merits of CCISD's motion, which it determines based on the SAC and its exhibits.

## II.   Gender, National Origin, and Race Discrimination under Title VII and the TCHRA

### A.   Gender Discrimination

The Court previously dismissed Plaintiff's claims for gender discrimination under Title VII and the TCHRA because she failed to allege that she suffered an actionable "adverse employment action." *See* D.E. 17, p. 8–9. Plaintiff now reasserts these claims. And CCISD again requests dismissal because Plaintiff fails to allege an adverse employment action. In response, Plaintiff claims she was "placed in all that she went through as a female being accused of child abuse/neglect, placed on administrative leave, [job-in-jeopardy] letter in [her] file, etc." D.E. 25, p. 5.

Plaintiff's arguments fail.  As an initial matter, it is not the Court's responsibility to dig through the pleadings or Plaintiff's numerous exhibits to identify any potentially adverse employment actions other than those specifically identified in Plaintiff's response. *See Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")).  As the Court previously found, Plaintiff's allegations regarding her administrative leave, if true, would not amount to an adverse employment action.  D.E. 17, p. 8–9.  The SAC fails to identify any new basis for finding that her administrative leave constitutes an adverse employment action.  It does not allege, for example, that Plaintiff was denied pay or some other employment benefit while on leave.  *See* D.E. 24, ¶¶ 63, 70.

The allegations regarding the job-in-jeopardy letter are similarly deficient.  Plaintiff claims that this letter "has a detrimental effect on her reputation, could result in incarceration and it limits her opportunity for advancement within CCISD and to receive promotions or advancement."  D.E. 24, ¶ 67.  And she further alleges that "such negative and false remarks in her personnel file prevent her employment and increased wages at other jobs for which she may apply in her future career."  *Id*.

As CCISD argues, these allegations amount to non-actionable "tangential effect[s]" that the letter might have on Plaintiff's future prospects for employment, promotion, or compensation.  *Thompson v. Exxon Mobil Corp.*, 344 F. Supp. 2d 971, 980 (E.D. Tex. 2004) (citations omitted); *see also Welsh v. Fort Bend Indep. Sch. Dist.*, 941 F.3d 818, 825 (5th Cir. 2019) ("The [Teacher in Need of Assistance Plan] . . . did not result in a material loss of job responsibilities.   [The defendant] did not revoke any of [the plaintiff's]

privileges or responsibilities; [the defendant] did not transfer or demote [the plaintiff]; and [the plaintiff's] title, hours, salary, and benefits did not suffer . . . .") (citations omitted). The Court finds that Plaintiff has not plausibly alleged that she suffered an adverse employment action as required by Title VII and the TCHRA. The claims for gender discrimination under these laws are DISMISSED. The Court need not reach CCISD's additional argument that any mistreatment was not based on Plaintiff's gender.

### B.    National Origin Discrimination

Plaintiff additionally claims that CCISD committed national origin discrimination by (1) issuing her the job-in-jeopardy letter, and (2) denying her classroom supplies, specifically a Smart Board, that were provided to non-Hispanic teachers. As noted above, the allegations surrounding the job-in-jeopardy letter cannot support a cause of action. Any national origin claims based on the letter are therefore DISMISSED.

Beyond that, the Court previously held that any Title VII discrimination claims based on events occurring before November 8, 2017, are time barred. D.E. 17, p. 15. Plaintiff concedes that she was denied a Smart Board before that time. D.E. 24-2, p. 5. For this reason, any Title VII or TCHRA discrimination claims based on the Smart Board are DISMISSED WITH PREJUDICE.[3]

---

[3] As explained in the Court's previous order, Title VII creates a time bar on certain claims because it requires plaintiffs to file an EEOC discrimination charge within 300 days of any alleged discrimination. The TCHRA contains a similar exhaustion requirement, except that it requires discrimination charges to be made within 180 days of a discriminatory act. *See Williams v. Tarrant Cty. Coll. Dist.*, 717 F. App'x 440, 444 (5th Cir. 2018); *Hamer v. Ewing Const. Co.*, No. CIV.A. C-07-93, 2007 WL 1231681, at *4 (S.D. Tex. Apr. 24, 2007).

### C.    Racial Discrimination

Plaintiff additionally asserts racial discrimination claims.  D.E. 24, p. 30.  CCISD urges the Court to dismiss these claims because Plaintiff failed to exhaust her administrative remedies under Title VII.  The Court agrees.  Plaintiff filed two EEOC discrimination charges but neither mentioned race.  D.E. 17, p. 4–5, 6 n.2.  And Plaintiff makes no attempt to explain or excuse this omission.  *See Brooks v. Firestone Polymers, LLC*, 70 F. Supp. 3d 816, 841 (E.D. Tex. 2014) ("The primary purpose of the EEOC charge is to provide notice to the respondent of the discrimination alleged . . . .").  Any racial discrimination claims under Title VII or the TCHRA are therefore DISMISSED WITH PREJUDICE.[4]

## III.    Age Discrimination under the ADEA and TCHRA

Plaintiff previously brought claims for age discrimination under the ADEA and TCHRA.  She alleged that CCISD gave a younger, less qualified colleague a promotion.  The Court dismissed these claims because Plaintiff failed to allege that she actually applied for the promotion.  D.E. 17, p. 9.  Plaintiff now reasserts these claims.  In turn, CCISD argues that the SAC, like the FAC before it, fails to allege that Plaintiff applied for the promotion.

The Court agrees with CCISD.  The SAC inexplicably alleges both that Plaintiff applied for the position and that she was unable to apply for the position:

---

[4] CCISD does not specifically address the TCHRA, but it employs the same notice requirement as Title VII.  *See Jefferson v. Christus St. Joseph Hosp.*, 374 F. App'x 485, 490 (5th Cir. 2010) ("[T]he appellants all have failed to exhaust their retaliation claims under Title VII, the ADEA, and the TCHRA because they could not be reasonably . . . expected to grow out of the charge of discrimination.") (citations and quotations omitted).

> Plaintiff applied for the lead teacher, but was not able to apply for
> the position of lead teacher/Department Chair because it was not
> advertised.  The person that had the position previous to [Plaintiff's
> younger colleague] was her co-inclusion teacher.  Principal Segovia
> awarded the position to [the younger colleague] before anyone even
> knew that the other lady was leaving.

D.E. 24, ¶ 62.[5]  As CCISD argues, these contradictory allegations do not permit the Court

to "draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  Specifically, they do not

permit an inference that Plaintiff's age was the but-for cause of any actionable

employment decision.  *See Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir.

2010).

The age discrimination claims under the ADEA and TCHRA are therefore

DISMISSED.

## IV.    Disability-Related Claims under the ADA and TCHRA

The Court previously dismissed Plaintiff's disability-based discrimination, hostile

work environment, and failure-to-accommodate claims because Plaintiff failed to allege

that she had a covered "disability" under the ADA or TCHRA.  D.E. 17, p. 10.  The SAC

now makes a variety of allegations aimed at establishing that she is disabled because of

her obesity.  In light of these allegations, CCISD now challenges the disability-related

claims on different grounds.  The Court addresses the discrimination and accommodation

claims below.  It addresses all hostile work environment claims separately.

---

[5] The SAC contains several other conclusory assertions that Plaintiff applied for the position.  *See, e.g.*, D.E. 24, ¶ 37.  On a separate note, CCISD suggests that Plaintiff has made the allegation that she had a "standing application" for the position.  D.E. 21, p. 4 n.3.  But such an allegation does not appear in the SAC.  And Plaintiff does not specifically identify any such allegation in her response to the instant motion, so the Court will not consider it.

### A.    Discrimination

CCISD first argues that, as with the Title VII claims, Plaintiff fails to allege that she suffered an actionable adverse employment action.  Plaintiff responds that she was placed on administrative leave, Principal Segovia colluded with others to make false accusations against her, a human resources administrator threatened to put her on leave, she received the job-in-jeopardy letter, and she was passed over for the same promotion underlying her age-discrimination claim.  D.E. 25, p. 10–12.

These allegations are insufficient.  As with the age-discrimination claims, Plaintiff fails to allege that she applied for any promotion.   *See Thomas v. Staple Cotton Disc. Corp.*, 182 F. App'x 337, 338 (5th Cir. 2006) (ADA failure-to-promote claim requires plaintiffs to show they sought the promotion).  Beyond that, Title VII, the ADA, and TCHRA all employ the same "adverse employment action" requirement for discrimination claims.  *See* D.E. 17, p. 9 n.4; *Stringer v. N. Bolivar Consol. Sch. Dist.*, 727 F. App'x 793, 799 n.3 (5th Cir. 2018).  And Plaintiff's remaining disability-related allegations are essentially identical to her gender-related allegations, which are insufficient for the reasons explained above and in the Court's prior order.  *See* D.E. 17, p. 7–8.

For these reasons, Plaintiff's disability-based discrimination claims under the ADA and TCHRA are DISMISSED.

### B.    Failure to Accommodate

Plaintiff next alleges that CCISD denied her reasonable accommodations under the ADA and TCHRA, identifying the requested accommodations as: (1) an  ergonomic chair, (2) a Smart Board, (3) an easel, (4) modifications to a sink and cabinets, (5) a

walker, and (6) breaks or additional assistance for taking students to lunch.  D.E. 24, ¶ 72.
She also complains about events occurring in October of 2018, as well as the 2019–2020
school year.  For the reasons stated below, the claims based on the chair, Smart Board,
easel, and all events occurring after September 4, 2018, are DISMISSED WITH
PREJUDICE.  The motion to dismiss is DENIED as to the remaining claims.

### 1.    Administrative Remedies

CCISD argues that Plaintiff cannot bring any accommodation claims because she
failed to exhaust her administrative remedies under the ADA.  Specifically, Plaintiff's
initial EEOC discrimination charge does not allege facts suggesting that Plaintiff sought a
disability-related accommodation.  *See* D.E. 17, p. 13 (detailing the ADA's administrative
requirements).  The Court rejects this argument.  Plaintiff's initial charge alleges that she
was "denied a reasonable accommodation for [her] disability."  D.E. 24-14, p. 2.  It
additionally states that Plaintiff had been required to physically submit lesson plans and
that she was provided old teaching equipment.  *Id*.  These allegations, especially the
complaint about teaching equipment, mirror the accommodation claims asserted in the
SAC.  *See* D.E. 24, ¶ 72.  Moreover, none of CCISD's cited authorities render the charge
inadequate.[6]

---

[6] *See Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996) ("It is undisputed that [the plaintiff] did not file
a disability discrimination charge with the EEOC or with a state or local agency."); *Capozzelli v. Allstate Ins. Co.*,
No. 2:13-CV-00260-JRG, 2014 WL 786426, at *3 (E.D. Tex. Feb. 25, 2014) ("The phrase 'reasonable
accommodation' appears only once in the charge, where [the plaintiff] was described as 'a qualified individual with
disability inasmuch as he is able, *with or without reasonable accommodation*, not just to perform, but to excel in the
essential functions of' his position"); *Rodriguez v. Alcoa Inc.*, 805 F. Supp. 2d 310, 322 (S.D. Tex. 2011) ("[The
plaintiff's] EEOC Charge does not include the term 'reasonable accommodation,' and it contains no allegations even
hinting at the possibility he might raise such a claim in the future.").

However, the Court agrees with CCISD that the ADA's administrative requirements limit the accommodation claims in another way: Plaintiff cannot assert such claims if they accrued before November 8, 2017 or after September 4, 2018.  As noted above, Plaintiff complains of various events in October of 2018 and in the 2019–2020 school year.  But these events post-date her initial EEOC discrimination charge, which she filed on September 4, 2018.  And Plaintiff's second discrimination charge, filed on January 2, 2019, only alleged retaliation.  For these reasons, Plaintiff has not exhausted her administrative remedies with regard to accommodation claims that accrued in October 2018 or during the 2019–2020 school year.   Whether they are brought under the ADA or the TCHRA,[7] such claims are DISMISSED WITH PREJUDICE.

Similarly, the Court previously held that Plaintiff cannot assert ADA retaliation claims if they accrued before November 8, 2017.  D.E. 17, p. 13. This time bar also applies to any accommodation claims.  *See Patton v. Jacobs Eng'g Grp., Inc*., 874 F.3d 437, 443 (5th Cir. 2017).[8]   Specifically, it applies to the claims that are based on the denial of a chair, Smart Board, and easel.  The SAC and attached exhibits state that Plaintiff was denied these items before November 8, 2017.  *See* D.E. 24, ¶ 34 (alleging Plaintiff requested and was denied a chair in 2015); D.E. 24-2, p. 5 (stating Plaintiff was

---

[7] Again, while CCISD does not address the TCHRA, its exhaustion requirements mirror those of Title VII.  *See Williams*, 717 F. App'x at 444; *Hamer*, 2007 WL 1231681, at *4.

[8] In her response, Plaintiff argues that she exhausted her administrative remedies by filing four "grievances" directly with CCISD personnel.  However, such internal grievances are irrelevant to the administrative requirements of the ADA and TCHRA.  *See Williams*, 717 F. App'x at 445 ("Under each, a Texas plaintiff must exhaust administrative remedies by filing a charge with the Equal Employment Opportunity Commission or the Texas Workforce Commission."); *Holmes v. Texas A&M Univ.*, 145 F.3d 681, 684 (5th Cir. 1998) ("Even if it was necessary for [the plaintiff] to exhaust his remedies with the EEOC before bringing federal suit, under no circumstances was [the plaintiff] required to exhaust his internal university remedies.").

denied all three items "previous to the 300 days"); D.E. 24-21, p. 3 (stating Plaintiff requested and was denied a chair and easel in August 2017). These ADA and TCHRA accommodation claims are DIMISSED WITH PREJUDICE.[9]

### 2.    Sufficiency of the Pleadings

Given the above rulings, the Court is left to examine the accommodation claims based on the denial of: (1) modifications to a sink and cabinets, (2) a walker, and (3) breaks or additional assistance for taking students to lunch. For its part, CCISD argues that Plaintiff has not plead facts sufficient to support these claims.[10]

The SAC mentions these accommodations in a single paragraph, stating in relevant part:

> [Plaintiff] has requested reasonable accommodations from CCISD several times prior to the filing of this suit and was denied. She was promised . . . modifications to the sink and cabinets but none were ever provided. She was denied a walker, breaks or additional assistance for taking students to lunch or to assist in any other way. The failure to provide reasonable accommodations was documented by [Plaintiff] to CCISD and to EEOC.

D.E. 24, ¶ 72. And Plaintiff has alleged that she is disabled because of her obesity.

The Court finds the allegations sufficient and CCISD's motion in this regard is DENIED.

---

[9] CCISD does not address the TCHRA. But again, it requires plaintiffs to file discrimination charges within 180 days of a discriminatory act. *See Williams*, 717 F. App'x at 444; *Hamer*, 2007 WL 1231681, at *4.

[10] To successfully state accommodation claims under either the ADA or TCHRA, Plaintiff must allege: "(1) she is a qualified individual with a disability; (2) her employer knew of the disability and its consequential limitations on the plaintiff; and (3) the employer failed to make reasonable accommodations for such known limitations." *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 318 (5th Cir. 2016). "It is the plaintiff's burden to request reasonable accommodations." *Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).

### V.     Hostile Work Environment

Next, Plaintiff brings hostile work environment claims under the  ADA, TCHRA, and Title VII, relating to her disability, gender, and national origin, as well as retaliation for filing EEOC discrimination charges.  D.E. 24, p. 33.  CCISD urges dismissal because, as with the FAC, the SAC fails to allege that: (1) any harassment was severe and pervasive enough to support a hostile work environment claim, and (2) Plaintiff was harassed for retaliatory or discriminatory reasons.  The Court agrees in part.

### A.     Gender- and National Origin-Based Harassment

First, the Court finds that Plaintiff has failed to plausibly allege she was harassed because of her national origin or gender.[11]   In large part, Plaintiff alleges that other Hispanic women—Julissa Segovia, Grace Villareal, and Angie Ramirez—discriminated against her.  *See, e.g.*, D.E. 24, ¶¶ 62–63, 78; D.E. 24-17; D.E. 24-21, p. 23–25; D.E. 25, p. 18–22.[12]  And she additionally concedes that other Hispanic women were not subject to some of the same discriminatory acts that she was allegedly subject to.  For example, she acknowledges that several Hispanic women were provided teaching equipment, such as

---

[11] Title VII and the TCHRA provide the same standard for determining hostile work environments. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 650 (5th Cir. 2012).  To state a claim, Plaintiff must allege she: "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on [her belonging to the protected group]; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Id.* at 651 (citation omitted).

[12] Plaintiff claims that Principal Segovia was responsible for the job-in-jeopardy letter, having Plaintiff placed on administrative leave, and the denial of classroom equipment, among other things.  She claims that Grace Villareal, a paraprofessional who assisted Plaintiff in her classroom, intentionally undermined Plaintiff's control of the class and colluded with Segovia to falsely accuse her of neglecting students.  And she claims that Angie Ramirez, CCISD's executive director for school leadership, conducted an inadequate investigation into her allegations of discrimination and then wrote a report that unfairly criticized her job performance. *See* D.E. 24, ¶¶ 62–63; D.E. 24-17; D.E. 24-18.

Smart Boards and Smart TVs, that she was denied.  D.E. 24-21, p. 20.[13]  For these reasons, Plaintiff has failed to allege that any harassment was due to her national origin, gender, or a combination of the two.[14]

The gender- and national origin-based hostile work environment claims under Title VII and the TCHRA are therefore DISMISSED.

### B.    Disability-Based Harassment

The Court disagrees, however, with CCISD's argument that Plaintiff failed to allege a disability-based hostile work environment under the ADA or TCHRA.[15]  Plaintiff alleges that Principal Segovia has been harassing her because of her obesity, which CCISD does not dispute constitutes a disability, since August of 2015.  D.E. 24, ¶¶ 33.  Specifically, Segovia denied Plaintiff a variety of classroom supplies that were provided to non-disabled teachers, including an easel, a Smart Board, and Smart TV.  D.E. 24, ¶¶ 33–36; D.E. 24-21, p. 5–7.[16]  She "ridiculed, poked fun at, humiliated and teased [Plaintiff] for her morbid obesity."  D.E. 24, ¶ 40.  And she subjected Plaintiff to certain

---

[13] For this reason, the Court need not reach CCISD's argument that Plaintiff has not stated a gender- or national origin-based claims solely because Principal Segovia, like Plaintiff, is a Hispanic woman. *See Elrod v. Sears, Roebuck and Co.*, 939 F.2d 1466, 1471 (11th Cir. 1991) ("[I]t is difficult for a plaintiff to establish discrimination when the allegedly discriminatory decision-makers are within the same protected class as the plaintiff.").

[14] *See Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025, 1034 (5th Cir. 1980) ("[W]hen a Title VII plaintiff alleges that an employer discriminates against black females, the fact that black males and white females are not subject to discrimination is irrelevant and must not form any part of the basis for a finding that the employer did not discriminate against the black female plaintiff.").

[15] The ADA employs the same standard for hostile work environment claims as Title VII and the TCHRA. *See Byrnes v. City of Hattiesburg*, 662 F. App'x 288, 290 (5th Cir. 2016).

[16] Unlike the ADA discrimination claims, the hostile work environment claims are not time barred even if some events comprising the claim occurred more than 300 days before Plaintiff filed her first discrimination charge.  *See Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 391 (5th Cir. 2005) ("Under the continuing violation doctrine, a plaintiff is relieved of establishing that all of the alleged discriminatory conduct occurred within the actionable period if the plaintiff can show a series of related acts, one or more of which falls within the limitations period.").

requirements that other teachers were not subject to, such as requiring her to physically turn in lesson plans that other teachers submitted online and requiring her to complete certain administrative tasks during the summer.  D.E. 24-21, p. 26–27.[17]

None of CCISD's cited authorities render these acts insufficiently severe or pervasive.  *See, e.g.*, *Hernandez*, 670 F.3d at 652 ("If in fact only two incidents . . . occurred over a ten-year period, this would not create a fact issue that the harassment was sufficiently severe . . . .") (citations and quotations omitted); *Lee v. Reg'l Nutrition Assistance, Inc.*, 471 F. App'x 310, 311 (5th Cir. 2012) ("The racial epithet and comment by Lee's coworker were isolated incidents in Lee's employment . . . .").  Plaintiff alleges more than two acts and she alleges that they have been continuously perpetrated by her superior.

The Court also rejects CCISD's argument that Plaintiff did not inform CCISD of her obesity until October of 2018 and, therefore, any earlier harassment could not have been based on her disability.  The SAC and its exhibits contain numerous allegations suggesting that Plaintiff's obesity is obvious to anyone who interacts with her.  While CCISD argues this is insufficient, its cited authority only holds that failure-to-accommodate claims cannot be solely based on "obvious" disabilities.  *See Patton*, 874 F.3d at 444.  This is because, for those claims, "the initial burden rests primarily upon the employee . . . to specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations."  *Id*. (citations and quotations omitted).  No such requirement applies to hostile work environment claims.

---

[17] Plaintiff alleges other harassing acts.  *See* D.E. 24-21, p. 24-26.

For these reasons, CCISD's motion is DENIED with respect to the disability-based hostile work environment claims under the ADA and TCHRA.

## VI.   Retaliation under the ADA, TCHRA, & Title VII

Plaintiff also brings retaliation claims under the ADA, TCHRA, and Title VII, alleging that CCISD retaliated against her because she reported discrimination to the EEOC.   D.E. 24, p. 32–33.[18]   The Court previously dismissed these claims because Plaintiff failed to identify any retaliatory acts occurring after she filed either of her two EEOC discrimination charges.   CCISD again urges dismissal because: (1) Plaintiff has not identified any protected activity that prompted the alleged retaliation, and (2) the alleged retaliation does not constitute an actionable adverse employment action.

The Court disagrees.   Like discrimination claims, retaliation claims also require plaintiffs to show they suffered an "adverse employment action."   But this term is defined more broadly for retaliation claims.   As the Court noted in its prior order, the standard for these claims is whether the alleged retaliation "might well have dissuaded a reasonable worker" from engaging in a protected activity.   *Mitchell v. Snow*, 326 F. App'x 852, 855 (5th Cir. 2009) (quotations and citations omitted).

Unlike the FAC, the SAC now plausibly alleges retaliatory adverse employment actions occurring after Plaintiff filed her first EEOC charge on September 4, 2018, which is a protected activity under Title VII, the ADA, and TCHRA.   *See* D.E. 24-14, 24-18; *see*

---

[18] The SAC only alleges retaliation with regard to Plaintiff's EEOC charges.   D.E. 25, p. 32–33.   For this reason, the Court will not consider Plaintiff's arguments, only made in her briefing, that she engaged in other protected activities, such as filing internal grievances or reporting discrimination to officials of the American Federation of Teachers.

also *San Antonio Water Sys. v. Nicholas,* 461 S.W.3d 131, 136 (2015) (TCHRA and Title VII); *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (ADA).

Specifically, the SAC alleges that Plaintiff met with Donna Adams, a Human Resources Director, in September 2017—the same month that she filed her first discrimination charge.  D.E. 24, ¶64.  At the meeting, Plaintiff informed Adams that her doctor wanted her to "take it easy with her arms and lifting."  *Id*.  Then, on October 2, Adams called an "ADA meeting," during which she criticized Plaintiff's work performance in front of other participants, divulged sensitive medical information, and informed Plaintiff that she would recommend that Plaintiff be placed on medical leave. D.E. 24, ¶¶ 65, 79–82; D.E. 24-21, p. 27–28.[19]

The Court finds that these allegations are sufficient to support a retaliation claim. *See Stewart v. Miss. Transp. Comm'n*, 586 F.3d 321, 332 (5th Cir. 2009) ("Placing an employee on paid administrative leave, however, cannot be said to be a 'petty slight.' Indeed, depending on the circumstances, it may range from a completely benign measure to one that stigmatizes an employee and causes significant emotional distress.").  It also rejects CCISD's argument that it placed Plaintiff on leave because of legitimate concerns about her physical ability to perform her job duties.  This argument is based on exhibits to Plaintiff's response, which the Court cannot consider without converting the instant

---

[19] In its reply, CCISD raises an additional argument that Plaintiff did not exhaust her administrative remedies with regards to retaliation based on the ADA meeting or any resulting medical leave.  Having reviewed Plaintiff's second EEOC charge and the documents that it references, the Court finds this argument meritless.  *See* D.E. 24-17, 24-18; *see McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) ("[T]he scope of an EEOC charge should be liberally construed for litigation purposes . . . .").

motion into a motion for summary judgment.  As already explained, the Court sees no request that it do so, much less any valid reason for doing so.

CCISD's motion with regard to the retaliation claims under the ADA, TCHRA, and Title VII is DENIED.

## VII.   Whistleblower Claims

The Court previously dismissed with prejudice Plaintiff's claim under the federal Whistleblower Protection Act of 1989.  D.E. 17, p. 18.  The SAC briefly mentions that act in a heading, which appears to be an inadvertent remnant from the FAC.  D.E. 24, p. 35.  But to the extent the SAC reasserts this claim, it is DISMISSED WITH PREJUDICE for the same reasons previously given.  *See* D.E. 17, p. 18.

The SAC also asserts a claim under the Texas Whistleblower Act.  D.E. 24, p. 35. CCISD argues that this act renders school districts immune from suit in federal court and, in any case, Plaintiff failed to state a claim.  As CCISD points out, at least one federal court has agreed with its immunity argument.  *See Hoskins v. Kaufman Indep. Sch. Dist.*, No. CIV.A.3:03-CV-0130-D, 2003 WL 22329028, at *1 (N.D. Tex. Oct. 7, 2003).  Yet Plaintiff makes no attempt to convince the Court that she can maintain this claim in federal court.  It is therefore DISMISSED WITH PREJUDICE.  The Court need not reach CCISD's other arguments.

## VIII.  Section 1983

CCISD requests dismissal of the two claims that Plaintiff brings under Section 1983. First, the Court previously dismissed with prejudice Plaintiff's claim for official oppression. D.E. 17, p. 17.  Plaintiff reasserts this claim in her SAC without excuse or explanation.  D.E. 24,

p. 33–34.  For the reasons previously stated by the Court, this claim is again DISMISSED WITH PREJUDICE.  *See* D.E. 17, p. 17.

Second, the Court previously dismissed Plaintiff's claim for conspiracy against rights. D.E. 17, p. 17–18.  The SAC appears to reassert this claim twice, once in count ten and once in count twelve.  CCISD again requests dismissal, arguing that, with one exception, the Court's prior reasoning still applies.[20]  The Court agrees with CCISD.  Plaintiff does not specify which of her federal rights the alleged conspirators violated.  At most, she states that CCISD violated some unspecified "rights to confidentiality."  D.E. 25, p. 26.  But Section 1983 does not provide a cause of action for all rights; a claim must be predicated on the violation of a federal right and, even then, not all federal rights suffice.  *See* D.E. 17, p. 17–18.  Plaintiff has therefore failed to state a claim under Section 1983.  The claim is DISMISSED.[21]

## CONCLUSION

CCISD's motion is GRANTED IN PART as detailed above.  D.E. 21.  It is otherwise DENIED.  Plaintiff retains: (1) failure to accommodate claims based on the denial of modifications to a sink and cabinets, a walker, and breaks or additional assistance for taking students to lunch; (2) disability-based hostile work environment claims under the ADA and TCHRA; and (3) retaliation claims under the ADA, Title VII, and the TCHRA.  All other claims are DISMISSED.  While Plaintiff has requested leave to amend, she has not demonstrated that she can remedy the deficiencies in her pleadings. To the contrary, many of the flaws from the FAC carried over to the SAC, despite the

---

[20] CCISD acknowledges that Plaintiff has now identified multiple persons involved in the alleged conspiracy.

[21] Defendants make two additional arguments, including that CCISD cannot conspire with its own employees under the intracorporate conspiracy doctrine, and that Plaintiff failed to allege facts sufficient to state a claim under *Monell v. Dep't. of Social Services*, 436 U.S. 658 (1978).  Because the Court finds dismissal appropriate for other reasons, it need not reach these arguments.

Court's careful explanation of the law.  *See Waddleton v. Rodriguez*, 750 F. App'x 248, 257 (5th Cir. 2018) (leave to amend is not justified if there is a "repeated failure to cure deficiencies by amendments previously allowed").  The Court DENIES leave to amend.

ORDERED this 7th day of September, 2020.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE